UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SAMUEL F. HOGGATT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:03-CV-256-JPG-SEB |
| vs. ) | |
| ) | |
| SHERIFF OF MARION COUNTY, ) | |
| INDIANA, ) | |
| ) | |
| Defendant. ) | |

### ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Samuel Hoggatt was incarcerated in the Marion County Jail on February 25, 2001, awaiting trial on criminal charges, when he accidently caught his finger between his cell door and the door frame. The incident caused the tip of the middle finger of his left hand to be severed. Distracted by excruciating pain and covering his finger with a towel to stop the bleeding, Hoggatt did not realize that the tip of the finger had actually been severed. He had been attempting to close the door to comply with the general order to "bunk-in" for the night, which is given at 11:00 p.m. each evening. In pain and in need of medical attention, Hoggatt began shouting for help. After visiting the bathroom in his cell, he left his cell area to push the emergency button located in the common area for his cell block. No guards were located within the cell block, which is not unusual, but a guard is always present in the control room which monitors eight separate cell blocks. The lack of immediate response to the emergency call button and the shouting by Hoggatt and other prisoners is unexplained. Defendant speculates that the officer in the control room was standing at one of eight windows in the room, watching a

guard team in the process of securing another cell block after the "bunk-in " order had been given for the evening, and did not hear the call button or shouting from Hoggatt's cell block.

Hoggatt sat at a table in the common area waiting for someone to come attend to his injury.  He claims it took two hours before officers on rounds at the jail discovered him in the common area.  The jail's incident report states that Hoggatt was discovered at 11:50 p.m. and the report itself was entered into the computer at the jail at 12:46 a.m. the next morning.  Since the medical clinic at the jail closes at 4:00 p.m., treatment for injuries such as this had to be obtained at Wishard Hospital.  The movement log for the fourth floor, where Hoggatt's cell block is located, states that he was taken to the "Bookout" section of the jail at 12:16 a.m., where he waited to be transported to Wishard Hospital.  The log and deposition of the Assistant Jail Commander also confirm that between the "bunk-in" order and the time Hoggatt was found, a false smoke alarm and a fight in a cell block on the other side of the building had occupied the attention of guards.

Hoggatt testified that he waited in the "Bookout" area for two other inmates to be loaded with him into the Defendant's vehicle for transportation to the hospital.  He said the wait was more than an hour and that he did not arrive at the hospital until 2:10 a.m.  Defendant does not deny that Plaintiff was required to wait while two pregnant female inmates were processed for transportation to the hospital.  Defendant's practice is that prisoners are provided with all their personal belongings when they are sent to the hospital, which takes time to process.  Defendant also points to the log book kept at the secured area of Wishard Hospital, which lists Hoggatt as completing his intake paperwork at 1:29 a.m.

While at the hospital, Hoggatt received a digital block and, after discussing the procedure with the surgeon, had some of the bone of the finger amputated to allow the skin on the finger to completely seal around the wound. Following the surgical procedure, Hoggatt was sent back to the jail. The hospital discharge documents indicate he was prescribed a pain killer (acetaminophen plus hydrocodone - known by the brand names Vicodin or Lortab) and a stool softener. Hoggatt claims he was also told by the doctor that his bandages should be changed every day. According to Hoggatt, he never received the pain killer that was prescribed and his bandage was not changed for three weeks, despite his requests. At her deposition, the Director of Inmate Medical Services interpreted the medical records as indicating that dressing supplies (gauze squares, tape and a topical ointment) were sent to Hoggatt a week after his accident, but Hoggatt claims he was not provided with scissors to utilize in changing the bandages. In any event, Hoggatt states that by the third week gauze had adhered to the wound. This condition precluded proper removal of the dressing at the jail clinic. The debridement of the wound had to be completed the following day at the hospital.

Hoggatt testified that prior to the accident, jail doctors had prescribed a transdermal patch for pain containing Fentanyl as well as a daily dose of the pain killer Percocet (acetaminophen plus oxycodone - known by the brand names Percocet or Tylox) to relieve the pain he was experiencing as a result of hip replacements and from his back. However, he said those pain killers did not work for the post surgical pain he was experiencing following his finger injury. He also testified that throughout his incarceration there were days when his Percocet was not timely provided and at least one time when he went without the pain killer for three days. According to Hoggatt, he filled out many medical request forms and made many complaints

-3-

regarding the failure of jail personnel to get him his medicines without response.  During discovery no copies of those requests were provided to him and no file of medical request forms is kept by the jail.

At the time, the jail had a medical clinic that was staffed by a doctor, a nurse and medical assistants, which kept hours of 7:00 a.m. to 4:00 p.m..  It was the custom of the jail to allow inmates to have control over dispensing their own non-narcotic prescriptions.  Narcotic prescriptions on the other hand, would be placed in individual daily envelopes, given to the guards for distribution to the inmates.  No specific record of individual envelope distribution is kept.  Wishard Hospital was both the emergency medical provider as well as the pharmacy for the jail.  Two daily trips were made to the hospital by jail personnel to pick up medication.  The policy with respect to injuries or emergency care after clinic hours was to have the correctional supervisor make a determination as to whether the situation warranted transport to the hospital by ambulance, transport by sheriff's vehicle or a return to the cell block with a referral to the clinic for morning sick call.  The supervisors, at a minimum,  had some first aid type training and were instructed to view the situation as though they were making a decision for their own child.

Hoggatt claims that following the finger injury, he spent the rest of his confinement in significant pain because of the jail's failure to provide adequate medical attention.  He was released from jail on June 7, 2001, having been incarcerated since January 19 of that year.  He filed this lawsuit in five counts, alleging violations of his constitutional rights for not providing timely emergency medical care following the injury, for causing an unreasonable seizure of a part of his finger, for failing to provide him with substantive and procedural due process, for

failing to provide ongoing prescribed medical care following the injury and breach of the Indiana statute requiring the Sheriff of a county to "take care of the county jail and the prisoners there." After Defendant filed its motion for summary judgment, Plaintiff dropped all claims except the claims that he was not provided timely emergency medical care and ongoing medical care in violation of the Eighth Amendment proscription against cruel and unusual punishment and the due process requirements of the Fourteenth Amendment.[1]

### *Summary Judgment Standard*

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id*. at 322-23. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986); *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249-52).

---

[1] Since Hoggatt was a pretrial detainee, the Fourteenth Amendment as opposed to the Eighth Amendment applies to bar inappropriate punishment, but the distinction is purely academic as the standard for treatment of pretrial detainees or convicted inmates is the same. *County of Sacramento v. Lewis*, 523 U.S. 833, 849-850 (1998).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge*, 24 F.3d at 290. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir. 1997). If genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Waldridge*, 24 F.3d at 920.

### *Discussion*

Hoggatt names only the office of Sheriff of Marion County as a Defendant, not the individual occupying that office, leading us to the conclusion that he sues the sheriff in his official, policy making capacity only. In order to prevail on either of his claims against the sheriff, Hoggatt must demonstrate that the sheriff, as the jail's commander and policymaker, was deliberately indifferent to a serious medical condition. *Estate of Moreland v. Dieter*, 395 F.3d 747, 758 (7th Cir. 2005). He must show that the sheriff was aware of a substantial risk of injury to Hoggatt and others, but failed to take appropriate steps to protect against the occurrence of such harm. *Id.* In other words there is a requirement that the sheriff make a deliberate choice as to the institution or continuance of a policy and that such choice directly caused the deprivation of constitutional rights complained of. *Id.*; *See, also Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). Deliberate indifference is not established simply by showing that the sheriff could have

chosen a better policy. *Id*. Unconstitutional policies, for purposes of a § 1983 claim, can be categorized in three ways: 1) an express policy that, when enforced, causes the deprivation of constitutional rights; 2) a widespread practice which is not necessarily officially authorized, but is so prevalent, permanent and well settled as to constitute a custom with the force of law; 3) an act directly attributable to a person with final policymaking authority. *Id.*

Other than suggesting that the jail was understaffed, which we question could even be characterized as a policy, Hoggatt offers no basis for finding that any unconstitutional policy resulted in his not being provided prompt medical attention.[2] First, we must state that it defies belief that the prisoner movement log, transport log and hospital intake records would all have purposeful mis-recordings of time or inaccurate recordings of time, so that Hoggatt's estimate of timing that night should be given credence. However, even if we turn a blind eye to the records and accept Hoggatt's estimates as accurate, there is certainly no evidence proffered which would suggest that the sheriff specifically called for operation of the jail at certain manpower levels or deliberately chose to have his office funded at a level which would not allow him to have additional personnel available to find and transport those inmates who have injured themselves or are otherwise in need of immediate medical treatment. In short, there is absolutely no

---

[2]Though not particularly relevant to the claims he has chosen not to drop, Hoggatt maintains that a question of fact remains as to whether or not his injury was caused by the under staffing of the jail such that he was required to close his own cell door. While under staffing, if significant enough, might lead to some problems which could draw into question whether or not there is a deprivation of basic prisoner rights or needs, the requirement that a prisoner shut his own cell door when he "bunks in" for the night is, without question, a policy that does not violate constitutional rights.

evidence of an unconstitutional policy at work with respect to the time it took for Hoggatt to receive medical attention. Nor has Plaintiff shown that in a "properly staffed" jail, personnel would have been allocated to the shift and location where he incurred his injury.

That leaves Hoggatt's claim that following his return from the hospital he was never provided the pain medication which was prescribed for him by the hospital staff at his discharge. We do not quarrel with Hoggatt's argument that a prison official's deliberate disregard of prescribed treatment requirements could amount to a violation of the prisoner's constitutional rights, nor do we disapprove of his contention that a blanket refusal to provide prescribed medication for pain could be equally described as deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104-106 (1976). However, "an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain" so as to amount to a constitutional deprivation. *Id*. at 105-106. Here, we do not know for what period of time the pain medication listed on the hospital discharge summary was to be provided, whether the doctor at the hospital was aware that the Plaintiff was receiving two other narcotic pain medications at the time, [3] or whether a copy of the discharge summary is even provided to the jail medical staff (though we would suppose that to be the case). Plaintiff offers absolutely no medical testimony indicating he failed to receive adequate medical treatment while in jail.

The bottom line here is that there is no evidence that anyone, particularly the sheriff, intentionally disregarded a medical need of Hoggatt. More importantly for purposes of the proof

---

[3] Hoggatt's testimony that on occasion his other prescription pain medicine was not timely delivered and that once he went three days without receiving his Percocet is not sufficient to allege or amount to the maintenance of an unconstitutional policy.

required in this particular case, there is no indication that the sheriff was aware that Hoggatt or anyone else was not obtaining needed medical care or medicines and chose to adopt or continue a policy which caused such circumstances to exist. The policy of distributing narcotics by having jail officers deliver individual envelopes to inmates may not be the best policy, but based upon the record before us, there is no indication that it was this policy that caused Plaintiff to go without his pain prescription. Nor is there evidence that he should have been given the additional pain medicine prescribed at the hospital in light of the other prescribed narcotics he was receiving at the jail for other maladies. Consequently, in light of the lack of evidence to support Plaintiff's claims, summary judgment is appropriate.

### *Conclusion*

Plaintiff has failed to come forward with sufficient evidence to support his claim that the Sheriff of Marion County has instituted or continued a policy that deprives Plaintiff of his constitutional right to receive reasonable medical attention or ongoing medical care. Therefore, Defendant's Motion for Summary Judgment **(Docket # 45)** is GRANTED. A separate judgment shall be entered in favor of the Sheriff of Marion County, Indiana and against Samuel F. Hoggatt on Mr. Hoggatt's Amended Complaint.

DATED this 14th day of November, 2005.

_____
JOHN P. GODICH, MAGISTRATE JUDGE
United States District Court
Southern District of Indiana


Copies to:

**Robyn Rebekah Willson Hattaway**
lmreubenlaw@yahoo.com robynlaw@yahoo.com

**James B. Osborn**
OFFICE OF CORPORATION COUNSEL
josborn@indygov.org

**Lawrence M. Reuben**
lmreubenlaw@yahoo.com

**Christopher Kenneth Starkey**
LAW OFFICE OF LAWRENCE M. REUBEN
starkeyck@msn.com lmreubenlaw@yahoo.com